## GENERAL COURT, MAY TERM, 1804.

### MANRO *vs.* GITTINGS and SMITH.

Conveyances made to particular creditors in contemplation of insolvency—*Held* to be '*undue & improper preferences,*' and therefore void under the act of 1800, ch. 44, for the benefit of sundry insolvent debtors

ISSUES sent by the *Chancellor* to be tried by a jury under the direction of this court:—

1. Whether or not the said *Gittings & Smith,* within two years before the 19th day of December 1800, did convey to *William Taylor, William P. Matthews, Thomas* and *Samuel Hollingsworth,* and *James Gittings, jun.* the whole or the greater part of their most valuable property with a fraudulent intent, thereby to give an undue and improper preference to the said grantees, or to the said grantees and other creditors?

2. Whether or not the said *Gittings & Smith,* within the time aforesaid, did convey and transfer to the said *William Taylor,* a vessel, purchased by them from *John Chalmers,* to secure the said *Taylor* from damage or loss on certain notes indorsed by him for them before their purchase of the said vessel, with a fraudulent intent by the said conveyance to give an undue and improper preference to the said *Taylor?*

3. Whether or not the said *Gittings & Smith,* and within the time aforesaid, after they had stopped pay-

ment, had a considerable quantity of merchandize
belonging to or consigned to them, which arrived at
the port of Baltimore, and delivered the same to *Jo-
seph P. Smith*, brother of the said *Smith* the defen-
dant, or permitted him to take and receive the same
with a fraudulent intent, thereby to give an undue and
improper preference to the said *Joseph P. Smith*, or
any other person?

On the trial of the said issues, or any of them, the
chancellor requested the honourable the judges of the
general court, on application of either party, to in-
struct the jury what ought to be considered an undue
and improper preference.

The following statement of facts was agreed to by
the counsel for the parties, viz. That the defendants,
during the years 1798, 1799, and until the 20th of
January 1800, were merchants and partners, trading
in Baltimore, by the name and firm of *Gittings and
Smith*; that they contracted large debts, were posses-
sed of a number of ships, and of goods and other
property to a large amount, and were in good credit
until the 29th of December 1799, on which day they
acknowledged, in a letter to the father of *Smith*, their
apprehensions of being unable to pay their debts, and
from that day until the 20th of January 1800, when
their insolvency was publickly known, made the seve-
ral conveyances (copies of which are produced in
court,) with the intention of giving preference to the
creditors mentioned in the said conveyances, if there
should be a deficiency in their property to pay the
whole of their said debtors. That all the parties to
the said conveyances, at the time of executing them,
did believe that the defendants were unable wholly to
pay their debts, and that the said conveyances trans-
ferred the whole of the property owned by the de-
fendants, as partners, at the time of their failure, and
that they owned no other property but what is men-
tioned in their schedule. That the account of *John
Chalmers*, one of the unpreferred creditors, as to
dates, (2d *December* 1799,) amount of notes, ($6200,)
and time of payment, ($1900 at 90 days, $1900 at

MAY 1804.

Manro
vs
Gittings & Smith

120 days, $1900 at 6 months, and $500 in cash,) is correct, and the vessel purchased of him is the same which was afterwards transferred to *William Taylor* and *William P. Matthews* on the 13th of January 1800. That the defendants on the 10th of December 1799, purchased of *William Winchester* 100 barrels of flour on a credit of 150 days, and about the same time another quantity of *Beal Owings* on a like credit, which composed a part of the cargo of the brig Ann afterwards transferred to *Thomas* and *Samuel Hollingsworth.* That the defendants purchased of *Thomas* and *Samuel Hollingsworth* coffee and flour to the amount of $17,153, and gave their four notes for the payment thereof, bearing date the 30th of October 1799, at 3, 4, 5, and 6 months. That the conveyance to *Thomas* and *Samuel Hollingsworth* was made to secure the payment, or in a satisfaction for the above notes, and the rest of their account as furnished; and that the sum of $10,000 cash was paid to the said defendants by the said *Thomas* and *Samuel Hollingsworth*, to enable the said defendants to go on with their business. That the conveyances to *William Taylor* and *William P. Matthews*, of the 13th and 20th January 1800, were made to secure the payment of certain promissory negotiable notes, bills of exchange, and custom house bonds, which the said *Taylor* and *Matthews* had signed and endorsed for the accommodation of the defendants at their request, and without having received any value therefor; which notes, bills and bonds, were not due at the time of executing the said conveyances, but have since been paid by the said *Taylor* and *Matthews*. That the statement of losses on the property conveyed to the said *Taylor* and *Matthews*, amounting to $90,687 is correct. That *The Dispatch* and *The Ranger*, were attached in *Great Britain*, and never came to the possession of *James Gittings, Junr.* or *John Yeiser*, to whom they were consigned in trust. And that the said conveyance has been wholly inoperative. That the accounts of *William Taylor* and *William P. Matthews*, as to the debts due to them, are correct, viz.

to the former $24,344, and to the latter $12,187; and that the said *Taylor* and *Matthews* took possession of the property assigned to them, as soon after the execution of the deeds as they could.

It was agreed that the *third issue* be struck out.

*Harper* and *S. Chase, Junr.* for the plaintiff, moved the court to instruct the jury, that the conveyances so made to particular creditors in exclusion of the rest, are fraudulent and void. They cited the statute of 13 *Eliz. ch.* 5, respecting fraudulent conveyances, which is to be liberally extended to suppress fraud. *Cowp.* 434. If an executor sells property belonging to his testator for the purpose of committing devastavit, the conveyance is void. These conveyances were made after it was publickly known the defendants were insolvent; and they reserved the surplus of the property to the grantors. A transfer, giving undue preference, is void. 13 *Vin. Ab.* 518. The *ninth* section of the act of 1800, *ch.* 44, "for the relief of sundry insolvent debtors," and amongst others the said *Gittings* and *Smith,* the defendants, is as follows: "That if any creditor, on the application of any such debtor to the chancellor, or within two years thereafter, shall allege in writing, to the chancellor, or to the general court of the shore, or to the county court of the county where such debtor shall reside, that such debtor hath directly or indirectly sold, conveyed, lessened, or otherwise disposed of, or purchased in trust for himself or any of his family or relations, or any other person or persons, intrusted or concealed any part of his property of any kind, or any part of his debts, rights or claims, with intent to deceive or defraud his creditors, or any of them, or to secure the same, or to receive or expect any profit or advantage thereby, or that he has passed bonds, or other evidences of debts, either without consideration or on improper consideration, or lost more than one hundred pounds current money by gaming at any one time, *or hath assigned or conveyed, any of his property, with fraudulent intent, to give an undue and improper pre-*

May 1804.

Manro
vs
Gittings & Smith.

ference to any creditor or creditors, or security, within two years before the passage of this act, the chancellor, &c. may, &c. or direct an issue or issues, &c. and if upon the trial of the said issue or issues by a jury, such debtor shall be found guilty of any intentional fraud or deceit of his creditors, or loss by gaming as aforesaid, or of *having given preference as aforesaid,* he shall for ever be precluded from any benefit of this act," &c.

The act of *April* 1787, *ch.* 34, s. 10, shews the idea of the legislature as to what they meant by undue and improper preference: "that if any debtor shall prefer any of his creditors, except securities, who have *bona fide* become such before the passing of this act, such preference shall be void in law and equity," &c. This was contrary to the common law doctrine. Here the defendants purchased property on a credit, and immediately conveyed it away to certain other creditors to pay unliquidated claims not due. What was the mischief intended to be remedied by the act? If the conveyances in this case did not give an undue and improper preference, what can be an undue and improper preference? This surely is the kind of preference the legislature intended to guard against. There is a provision in the bankrupt law, that a party making such conveyances as these, committed an act of bankruptcy. The act of 1800 was intended to put debtors and creditors under that law upon the same footing as debtors and creditors under the bankrupt law.

*Martin* (Attorney-General) and *Hollingsworth,* for the defendants. The legislature meant, that due and proper preferences might be given. It is admitted that in this case there were preferences, but it is denied that they were undue, improper or fraudulent. The act of *April* 1787, *ch.* 34, permits this kind of preference to be given to the *securities.* The defendants might have been in very good credit when the purchases were made. The situation of a merchant may be considered by him to-day as very good; but

he may receive accounts from abroad to-morrow which will induce him to believe, and know himself to be unable to pay all his creditors. It is not a proper inference to be drawn from the deeds that the residue, after payment of the creditors therein named, was to be reserved for the use of the defendants. It did not pay the creditors near their claim. When the purchase was made, it was understood that the defendants were in good credit. The preference to persons who had become securities, and who had advanced money for the credit of the house, &c. was meritorious, and they should always be secured. There is no moral turpitude alleged against the defendants; but it is admitted, if the preference given by them was improper, it was done through a misconception of the law. If the conveyances are void, a different mode should be adopted to set them aside; at common law, the debtor has a right to pay which ever creditor he pleases. If an actual *bona fide* payment, or sale to secure such payment be made, and the property be transferred in possession, or the deed recorded, then the purchaser may retain the possession, &c. The bankrupt law expressly says any such *voluntary preference* is void. But if a demand of payment be made, and the creditor threatens to sue, then if he be secured, such security is valid. In the insolvent law of 1801, the words *"fraudulent intent"* are omitted. The act of 1800 certainly authorises a *due and proper preference.* The act of *April* 1787, *ch.* 34, was intended as a general bankrupt system for this state, and a preference is not there authorised, except as to securities. If the conveyances were not fraudulent before the act of 1800 passed, that law could not make them so. The conveyances were made before the act passed, and it could not therefore operate on them. There was no law then in existence which declared them fraudulent or void.

CHASE, Ch. J. The question rests entirely upon the act of assembly of 1800, *ch.* 44. That act contemplated an equal distribution of property among the creditors.

The court are of opinion, that the deeds were executed with a fraudulent design of prefering some creditors to others, and within the meaning of the act, of giving "*an undue and improper preference.*"

Verdicts—The jury find upon the first issue joined, that the said *Gittings* and *Smith*, within two years before the 19th of December 1800, did convey to *William Taylor*, *William P. Matthews*, *Thomas* and *Samuel Hollingsworth*, the whole or the greater part of their most valuable property, with a fraudulent intent, thereby to give an undue and improper preference to the said grantees, or to the said grantees and other creditors.

The jury further find upon the *second issue*, that the said *Gittings* and *Smith*, within the time aforesaid, did convey and transfer to the said *William Taylor*, a vessel purchased by them from *John Chalmers*, to secure the said *Taylor* from damage or loss on certain notes endorsed by him for them before their purchase of the said vessel, with a fraudulent intent by the said conveyance to give an undue and improper preference to the said *Taylor*.

The court certified to the chancellor as follows:

The court do certify to the honourable the chancellor, that they did instruct the jury on the trial of the *first* and *second* *issues* from the court of chancery, in the case in which *Jonathan Manro* was plaintiff, and *Richard Gittings* and *Lambert Smith* were defendants, that if the jury should find that the deeds from the said *Gittings* and *Smith* to *William Taylor* and *William P. Matthews* were executed after the said *Gittings* and *Smith* had it in contemplation to become insolvent, that the said deeds were to be considered as giving an undue and improper preference to the said W. T. and W. P. M. and that the jury, in conformity to the instruction of the court, did find the said issues in the manner as above found.